BEHN, MEYER & CO., Limited, v. MILLER, Alien Property Custodian, et al.

(Court of Appeals of District of Columbia. Submitted February 11, 1924. Decided March 3, 1924.)

No. 4014.

1. War ⊕⟶12—Bill of complaint held to show that majority of corporate stock was enemy-owned.

A bill of complaint, averring that the assets of the plaintiff corporation were seized in February, 1918, by the Alien Property Custodian, and that it was a subject of the British empire the minority of whose capital stock was not owned, held, or possessed by any citizen, subject, or resident of any enemy nation or any ally thereof, *held* to show that a majority of the stock was enemy-owned.

2. War ⊕⟶12—Nonenemy corporation cannot recover property seized, where majority of stock owned by enemy.

Trading with the Enemy Act Oct. 6, 1917, § 9, subd. (a), and subd. (b), par. 11, as amended March 4, 1923, precludes a nonenemy corporation from recovering in its corporate capacity property seized by the Alien Property Custodian, where the majority of the stock was owned by citizens of enemy countries.

Appeal from the Supreme Court of the District of Columbia.

Suit by Behn, Meyer & Co., Limited, against Thomas W. Miller, as Alien Property Custodian, and another. From a decree dismissing an amended bill of complaint, plaintiff appeals. Affirmed.

Walter B. Howe and Charles H. Bradley, of Washington, D. C., and William D. Guthrie and Bernard Hershkopf, both of New York City, for appellant.

Peyton Gordon and Dean Hill Stanley, both of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This case is here on appeal from a decree entered in the Supreme Court of the District of Columbia, dismissing an amended bill of complaint filed by Behn, Meyer & Co., Limited, plaintiff corporation, against the Alien Property Custodian and the Treasurer of the United States, to recover certain assets of the plaintiff, seized by the Alien Property Custodian, or the money derived from their sale, and for an accounting.

[1] It is averred in the bill of complaint that the plaintiff corporation was engaged in business in the Philippine Islands in February, 1918, when its assets were seized by the Alien Property Custodian; that it was—

"a subject of the British empire, the minority of whose capital stock was not owned, held, or possessed by any citizen, subject or resident of any enemy nation or of any ally thereof."

From this averment it appears that the majority of the stock was enemy-owned. Indeed, it was conceded in argument that the majority of the stock was owned by German citizens.

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[2] The case arises under section 9 of the Trading with the Enemy Act, approved October 6, 1917 (40 Stat. 411), as amended March 4, 1923 (42 Stat. 1511). Subsection (a) of section 9 of the amended act is substantially a re-enactment of section 9 of the original act. It provides for recovery by—

"any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States."

Plaintiff contends that its case comes within the provisions of subsection (a) of section 9. This position cannot be sustained, since, while plaintiff is in its corporate entity nonenemy, a portion of its stock is enemy-owned, and this is sufficient to prevent it from recovering in its corporate capacity under subsection (a). The case, we think, falls within the provisions of paragraph 11 of subsection (b), § 9, which, among other things, accords the right of recovery to "a corporation, organized or incorporated within any country other than Germany, Austria, Hungary, or Austria-Hungary, and that the control of, or more than 50 per centum of the interests or voting power in, any such ` * * * corporation, was at such time, and is at the time of the return of any money or other property, vested in citizens or subjects of nations, states, or free cities" other than the enemy countries named. The act, in addition, broadly includes partnerships, associations, and unincorporated bodies of individuals having their principal place of business within nonenemy countries.

By this amendment it was clearly the intent of Congress to liberalize and enlarge the right of recovery. A number of the amendments to section 9 of the original act were made by an Act of Congress approved June 5, 1920 (41 Stat. 977), in which the purpose of the amendment is expressed in the report of the committee on, interstate and foreign commerce of the House of Representatives (66th Congress, 2d Session, Rep. No. 1089), as follows:

"The purpose of the above bill is to amend section 9 of the Trading with the Enemy Act, so as to .facilitate the return on the part of the Alien Property Custodian of money or other property conveyed, transferred, assigned, delivered, or paid to him or seized by him, under the provisions of the above act. * * * In view of the fact that 19 months have elapsed since the signing of the Armistice and during this period an actual state of peace has existed, there have been increasing demands for legislation asking for a return of property now being held by the Alien Property Custodian."

The 1923 amendment is a further enlargement of the rights of claimants. Plaintiff corporation, as stated in the brief of counsel—

"insists that the fact that a majority of its stock was enemy-owned is immaterial. That fact would have given the Alien Property Custodian the right to take the stock or beneficial interest of its enemy stockholders; but it did not confer upon him the right to seize and sell or liquidate the plaintiff's business, to the detriment, not only of its German stockholders, but of its neutral and friendly stockholders as well."

We think paragraph 11 of subsection (b) provides exactly the converse of the above proposition. It, clearly forbids recovery by a corpo-

ration organized in a nonenemy country, except where more than 50 per cent. of the stock is owned "by subjects or citizens of nations, states, or free cities" other than the enemy countries named therein. By this we are convinced that Congress intended to preclude a nonenemy corporation from recovering in its corporate capacity, where the majority of the stock was owned by citizens of enemy countries. The way, however, was still left open for nonenemy stockholders, owning stock in such a corporation, to come in and recover their stock or the value thereof.

We think it clear, therefore, that plaintiff corporation, with more than 50 per cent. of its stock owned by German citizens, is not entitled to recover.

The decree is therefore affirmed, with costs.

Appeal to Supreme Court of the United States allowed March 8, 1924.